# ARNSON and another v. MURPHY.[1]

(Circuit Court, S. D. New York. December, 1884.)

1. CUSTOMS DUTIES—ACTION TO RECOVER EXCESS OF DUTIES—CONDITIONS PRECEDENT.

Under section 14 of the act of June 30, 1864, (13 St. at Large, 202; section 2931, Rev. St.,) it is incumbent upon the plaintiffs, in a suit to recover an alleged excess of duties paid by them on their importations of merchandise, as a condition precedent to their recovery, to show—*First*, that they have protested; *secondly*, that they have appealed; and, *thirdly*, that they have brought their suit within the time required thereby.

2. SAME—DECISIONS OF SECRETARY OF TREASURY.

Under this section it is not incumbent upon the secretary of the treasury to communicate to the appellant his decision on an appeal from the decision of the collector of customs.

The plaintiffs in 1871 made certain importations of "nitro-benzole" at the port of New York, from Liverpool, England. The defendant, as collector of customs, classified said "nitro-benzole" as an "essential oil" not otherwise provided for, under section 5 of the act of July 14, 1862, (12 St. at Large, 543,) and in 1871 exacted of the plaintiffs duty thereon at the rate of 50 per centum *ad valorem*, as provided in that section for "essential oils." The plaintiffs duly protested in 1871 against such exaction, (except in case of their importations per the Pennsylvania, April 11, 1871, and per the Italy, May 24, 1871,) and duly appealed in 1871 from the decision of the defendant, as collector of customs, to the secretary of the treasury, (except in case of their importation per the Queen, March 24, 1871,) as provided in section 14 of the act of June 30, 1864, (13 St. at Large, 202 section 2931, Rev. St.) In the case of their importations by the Pennsylvania and the Italy, the plaintiffs made no protest within 10 days after the ascertainment and liquidation of the duties exacted thereon, and as to their importation by the Queen, they made no appeal.

In their protest the plaintiffs claimed that duty at 50 per centum *ad valorem* was erroneous, and that the lawful duty was but 40 cents per gallon, as nitro-benzole is a non-enumerated article, and as such non-enumerated article is liable only to the highest rate of duty imposed upon either of its component parts, agreeably to the similitude clause of the act of August 30, 1842, (section 2499, Rev. St.)

May 8, 1879, the plaintiffs brought this suit to recover the difference between the amount of duties exacted at 50 per centum *ad valorem*, and the amount of duties that should, as they claimed, have been exacted at the rate of 40 cents per gallon. After issue was joined, and in 1880, the case was first tried. Upon that trial the plaintiffs proved facts which, under the decision in *Murphy* v. *Arnson*, (not this suit; see 96 U. S. 131,) established that the legal rate of duty on

[1] Reported by James H. Fish, Esq., New York.

their importations, under the act of 1862, was 40 cents per gallon. At the close of the plaintiffs' case, upon the motion of defendant's counsel, the court directed a verdict for the defendant on the ground that this suit was not commenced within six years after the cause of action upon which the same was brought accrued, as prescribed by the New York statute of limitations then in force, the defendant, besides other defenses, having so pleaded. The plaintiffs having sued out a writ of error, the United States supreme court, at the October term of 1883, reversed thi: decision and ordered a new trial. The opinion then rendered in this case at that time by that court, and the facts that appeared at the first trial, are reported in 109 U. S. 238; S. C. 3 Sup. Ct. Rep. 184.

At the second trial of this suit, had on the second and third days of December, 1884, on the close of the plaintiffs' case the facts above stated, before allusion was made to the defendant's motion on the first trial of this suit, all appeared in evidence; but no·proof was made or offered in evidence by the plaintiffs to show, and it nowhere appeared, whether or not the secretary of the treasury had made a decision upon any of the plaintiffs' appeals from the decisions of the defendant as collector of customs. Thereupon counsel for defendant moved the court to direct a verdict for the defendant as to the plaintiffs' importation by the Queen, on the ground that the plaintiffs had made no appeal as required by law. To the granting of this motion the plaintiffs consented, and the court accordingly directed a verdict for the defendant as to that importation. The defendant's counsel also moved the court to direct a verdict for the defendant as to the plaintiffs' importation by the Pennsylvania and Italy, on the ground that no protest had been made in case of either of these importations within 10 days after the ascertainment and liquidation of duties thereon, as required by law. The court thereupon directed a verdict for the defendant as to these importations. The defendant's counsel then moved the court to direct a verdict for the defendant as to each of the other importations mentioned in their bill of particulars in this suit, on the ground that, to entitle the plaintiffs to recover after an appeal has been taken to the secretary of the treasury from the decision of the collector, as to the rate or amount of duties, the plaintiff must show either (1) that they have paid the duties before the decision of the secretary was made, and brought their suit within 90 days after such decision; or (2) that they have paid the duties after such decision, and brought their suit within 90 days after the payment thereof; or (3) that 90 days have elapsed after their appeal to the secretary, and no decision has been made, and that they have brought their suit after the expiration of such 90 days. This motion the court for the time being overruled.

The defendant's counsel then offered in evidence the decision of the secretary upon each of the appeals in the case of the last-mentioned importations. To this offer the plaintiffs' counsel objected on

the ground—*First.* That no such defense was pleaded. Being a statute of limitations, it must be pleaded. *Second.* The papers which purport to be such decisions of the secretary of the treasury were not communicated to the plaintiffs.

*Lewis Sanders* and *George N. Sanders,* for plaintiffs, cited section 14, Act of June 30, 1864; 13 St. at Large, 202, (section 2931, Rev. St.;) and *Arnson* v. *Murphy,* 109 U. S. 238; S. C. 3 Sup. Ct. Rep. 184.

*Thomas Greenwood* and *Samuel B. Clarke,* for defendant, cited *Arthur* v. *Unkart,* 96 U. S. 118, and *Chung Yune* v. *Schurtleff,* 10 FED. REP. 239.

COXE, J., (*orally.*) The proposition comes back to the question which I hoped might be avoided in the case, namely, whether or not this provision of the statute is a limitation or a condition precedent; in other words, whether the burden is upon the plaintiffs to prove that the conditions of the statute have been fulfilled, or upon the defendant to prove that they have not been. I have reached a conclusion favorable to the defendant with regret, because this appears to be a meritorious case. But without the statute the plaintiffs have no standing in court. It is strictly a statutory proceeding, which they are required to follow, and, as I read the statute, there are three conditions to be fulfilled before the action can be maintained—*First,* a protest within 10 days; *second,* an appeal within 30 days; and, *third,* the action must be brought within 90 days after an adverse decision by the secretary of the treasury; or, if there has been no decision, the plaintiffs must prove that fact and that the action was commenced after 90 days from the appeal. I see no way to separate these conditions. It was evidently the intention of congress that dissatisfied parties should pursue their remedy before the department as far as possible. Therefore I must hold that it is incumbent upon the plaintiffs, as a condition precedent to their recovery, to prove, *first,* that they protested; *second,* that they appealed; and, *third,* that the action was commenced at a time permitted by the statute.

*Plaintiffs' Counsel.* Of course I object to your honor's decision, and take an exception on the part of the plaintiffs.

It does not appear that there was any decision.

*The Court.* To maintain your case you must show affirmatively that there was no decision.

*Plaintiffs' Counsel.* To that we except.

*Defendant's Counsel.* Are we to understand now that the plaintiffs are going on with their case?

*Plaintiffs' Counsel.* Yes; I call Mr. Bernard Arnson.

Bernard Arnson, being duly sworn and examined as a witness for the plaintiffs, testifies:

*Question.* You are one of the plaintiffs in the suit? *Answer.* Yes, sir. *Q.* Did you ever receive any notice, prior to the commencement of the suit, of the

decision on your appeals from the decision of the collector of the port on the importations involved in this action—notice of the secretary of the treasury's decisions?

*Defendant's Counsel.* We object to that on the ground that it is immaterial whether the decision was received or not.

*The Court.* I think the objection is well taken. It is not incumbent upon the secretary to communicate his decision.

Plaintiffs' counsel excepts.

Upon the application of defendant's counsel to direct a verdict in favor of the defendant, the court said:

*Gentlemen of the Jury:* Upon the question of law in this case, there being no question of fact, the court has decided that this action is a statutory one, and the statutory conditions have not been performed by the plaintiffs; you will therefore render a verdict in favor of the defendant.

Under the directions of the court the jury so found.